AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
1) BLACK IPHONE WITH BLACK CASE CELLULAR TELEPHONE ) Case No. 8:23-MJ-543 (GLF)
   IMEI: 354811950515389 )
   IMEI2: 354811950233991 )

CURRENTLY LOCATED AT THE CHAMPLAIN BORDER PATROL STATION IN CHAMPLAIN, NEW YORK

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the Northern District of New York, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. 1324(a)(1)(A)(v)(I) | Conspiracy to commit alien smuggling by transporting and moving aliens within the United States |

The application is based on these facts:
See Attached Affidavit

☒ Continued on the attached sheet.
☒ Delayed notice of 30 days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

U.S. Border Patrol Agent Jeffrey L. Havicon
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Telephone *(specify reliable electronic means)*.

Date: September 29, 2023

_____
Judge's signature

City and state: Plattsburgh, NY

Hon. Gary L. Favro
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION FOR SEARCH WARRANTS FOR THE FOLLOWING ELECTRONIC DEVICES:<br><br>1) BLACK IPHONE WITH BLACK CASE CELLULAR TELEPHONE<br>   IMEI:  354811950515389<br>   IMEI2: 354811950233991<br><br>CURRENTLY LOCATED AT THE CHAMPLAIN BORDER PATROL STATION IN CHAMPLAIN, NEW YORK | Case No.  8:23-MJ-543 (GLF) |

### AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Jeffrey L. Havicon, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I am a Border Patrol Agent of the United States Border Patrol ("USBP") and have been so employed since March 29, 2007. Currently, I am assigned to the Champlain, New York Station. I make this affidavit in support of an application for a search warrant authorizing the search of: 1) a Black iPhone with black case cellular telephone with IMEI: 354811950515389 and IMEI2: 354811950233991 (referred to as the "Device"), which is currently in law enforcement's possession, and the extraction from these device of the electronically stored information, more fully described in Attachment B.  I make this affidavit based upon my personal knowledge and upon information received by me from other law enforcement officials.

-1-

2. I have personally participated in the investigation of the offenses set forth below. As a result of my participation and review of past and present reports made by agents of the USBP, I am fully familiar with the facts and circumstances of this investigation. The statements and facts contained in this affidavit are based upon my personal participation in this investigation, information provided by agents of the USBP, analysis of documents, my experience and training as a Border Patrol Agent with the USBP, and the experience and training of other agents involved in this investigation.

3. Since this affidavit is being submitted for the limited purpose of securing authorization to execute search warrants on various electronic devices, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for obtaining authorization to execute the search warrants.

**IDENTIFICATION OF THE SUBJECT ELECTRONICS TO BE EXAMINED**

4. The property to be searched is:

1) A Black iPhone cellular telephone with IMEI: 354811950515389 and IMEI2: 354811950233991.

5. This device is currently in storage at the United States Border Patrol Station in Champlain, New York. Through my training and experience, I know that this device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as it was when the device first came into the possession of the United States Border Patrol.

6.  The applied-for warrant would authorize the forensic examination of this device for the purpose of identifying electronically stored data particularly described in Attachment B. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I) (Conspiracy to commit alien smuggling by transporting and moving aliens within the United States) has been committed by Rigoberto MORALES-Hernandez and Mauricio PRADO-Guerrero who transported three illegal aliens after those individuals violated Title 8, United States Code § 1325(a)(2), unlawful entry by an alien. There is also probable cause to search the property described in Attachment A, for evidence of these crimes as described in Attachment B.

## PROBABLE CAUSE

7.  On September 25, 2023, at approximately 6:50 a.m., a concerned citizen contacted the Champlain, New York station. The concerned citizen claimed she witnessed three people exit the woods and get inside a black pick-up truck near Barcomb Road in Mooers, NY. Using remote surveillance technology, law enforcement located a black pick-up truck with a Maryland license plate travelling south on State Route 22. Recently, the Champlain, NY station has seen an increase in smugglers from the Maryland area. Agents responded and located a vehicle matching the citizen's description get on Highway 87 near Chazy, NY. The agents noticed the back window was down and there were three back seat passengers. Suspecting this was the vehicle the concerned citizen reported, the agent initiated a vehicle stop in order to conduct an immigration inspection of the occupants.

8. The agents approached the vehicle, identified themselves as Border Patrol Agents, and questioned the occupants as to their citizenship. The driver (Later identified as MORALES-Hernandez, Rigoberto) claimed to be a citizen of Mexico. The front seat passenger (Later identified as PRADO-Guerrero, Mauricio) also claimed to be a citizen of Mexico. As the agent was questioning the three back seat passengers, he noticed their shoes were covered with mud and their pants were wet from the knees down. The agent also observed backpacks in the trucked. The backpacks had leaves and wooded debris on them. The three back seat passengers claimed to be citizens of Mexico illegally present within the United States. None of the occupants had any documents to be within the United States legally. MORALES-Hernandez, PRADO-Guerrero, and the three passengers were placed under arrest and transported to the station for further investigation.

9. At the station, MORALES was issued his *Miranda* warning and agreed to speak with law enforcement. MORALES claimed he knows he has been arrested for transporting people and that he has previously picked up six other groups on US 11. MORALES told law enforcement authorities that he gets $1,200.00 to pick up groups of people who cross illegally into the United States. MORALES stated that after he picks up a group, he then takes them to his house in Maryland. MORALES told law enforcement these people will stay with him until they are picked up by family members or until he takes them to the airport. MORALES stated that PRADO traveled with him from Maryland and that PRADO illegally entered the United States approximately one year ago and has been working for him. MORALES claimed that PRADO has been with him the previous times he has been to the Northern Border to pick up

-4-

illegal entrants and that he pays PRADO $500.00 each time. MORALES claimed PRADO also knew they were here to pick up illegal entrants.

10. According to MORALES, the smuggling coordinator in Mexico makes arrangements with the people who want to illegally enter the United States. The coordinator in Mexico then provides these people with MORALES' phone number. According to MORALES, the people that want to cross illegally contact him and tell him when they get to Canada. MORALES claims they also tell him when they take an "Uber" near the border on the Canadian side. MORALES claims one of the people in the group shared his GPS location as they traverse into the United States from Canada.

11. At the station, PRADO was issued his *Miranda* warning and also agreed to speak with law enforcement. PRADO claimed he and MORALES came to the Northern Border to pick up three people who illegally entered the United States. PRADO claimed he was going to get paid $500.00 from one of these people. PRADO did not know how much MORALES was going to get paid from the others. According to PRADO, the older person in the group had PRADO's cellphone number and began messaging him. PRADO claimed this person provided PRADO with his GPS position while he walked through the woods. PRADO stated he told this person what vehicle was going to pick them up. PRADO said this group was walking the road when he and MORALES picked them up.

12. At the time of arrest, the following cellphone was discovered as described below.

a. The device was found on Mauricio PRADO-Guerrero.

13. Based on my training and experience in this and other cross border criminal investigations I have been involved with, including individuals entering the United States

illegally, individuals crossing the border illegally will often communicate and coordinate with someone to pick them up once in the United States or to inform them that they successfully crossed the border via cellular telephone. Individuals involved in crossing the border illegally often use a cellular telephone's GPS functions to search for and map out potential crossing locations. An additional function of cellular telephones that can be utilized by individuals crossing illegally includes the camera, individuals will often take photos of where they are crossing the border illegally. Smartphones, such as these devices can also be used to access social media. Based on my training, knowledge and experience of alien smuggling, I know that social media platforms, such as Facebook, are often used by smugglers to find customers and for communication between smugglers and aliens illegally entering the United States.

14. These devices are currently in the lawful possession of the United States Border Patrol and has been since September 26, 2023. I seek this warrant to be certain that further examination of this device will comply with the Fourth Amendment and other applicable laws.

15. Based on the foregoing, it is respectfully requested that a search warrant be issued for these devices which would allow for searches of all electronically stored information therein, including but not limited to: (1) listings of incoming and outgoing calls; (2) stored telephone and address directories; (3) direct connect and identification numbers; (4) all pictures and videos; (5) audio recordings relating to entry without inspection alien smuggling, and transporting aliens and conspiracy to transport aliens; (6) voice mail recordings relating to entry without inspection alien smuggling, and transporting aliens and conspiracy to transport aliens; (7) all GPS map or direction data; and (8) all instant messaging and related stored communications.

## TECHNICAL TERMS

16. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by

connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special

sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed

properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

17. Based on my training, experience, and research, I know that the cellular telephones have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. Further, I know that the GPS device has capabilities that allow it to serve as a GPS navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

18. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

19.  *Forensic evidence.*  This application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the black iPhone cellular telephone was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the black iPhone cellular telephone:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual

information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

20. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of these devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

21. *Manner of execution.* Because this warrant seeks only permission to examine these devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

22. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of this device as more fully described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*[signature]*

Jeffrey L. Havicon
United States Border Patrol

I, the Honorable Gary L. Favro, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by telephone on September 2?, 2023, in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

*[signature]*

HON. Gary L. Favro
UNITED STATES MAGISTRATE JUDGE

-13-

## ATTACHMENT A
## Property to be Searched

1. The property to be searched is:

   1) A Black iPhone cellular telephone with IMEI: 354811950515389 and IMEI2: 354811950233991.

2. This device is currently located at the United States Border Patrol Station in Champlain, New York.

3. This warrant authorizes the forensic examination of this device for the purpose of identifying the electronically stored information described in Attachment B. Some of the above-described property is data that will be contained on electronic and machine-readable media which is not readable in its present state. Your applicant requests that the court give authorization for searching law enforcement officers to seize, listen to, read, and maintain the above-described property, and to convert it to human-readable form as necessary. I further request that such warrant authorize the Device to be subject to any forensic examination by the authorized law enforcement officers, or any other entity who may possess the technology to complete the examination.

## ATTACHMENT B

### Particular Things to be Seized

1. All records on these devices described in Attachment A that relate to violations of 8 U.S.C. § 1324 (alien smuggling) which involved Rigoberto MORALES-Hernandez and Mauricio PRADO-Guerrero, and other co-conspirators, including:

   a. Listings of incoming and outgoing calls with corresponding date/time of calls;

   b. Stored telephone and address directories;

   c. Direct connect and identification numbers;

   d. Pictures and videos;

   e. All audio recordings;

   f. All voice mail recordings;

   g. All location and GPS data;

   h. All instant messaging and related stored communications;

   i. All SMS messages and related stored communications; and

   j. Any other notations or electronic storage of any kind.

2. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

a. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.